**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**

| | |
|---|---|
| **JASON VARNADOE, Individually and as Administrator of the ESTATES OF DONALD VARNADOE AND MARJORIE VARNADOE** <br> 187 Pierce Butler Drive <br> St. Simons Island, GA 31522 <br><br>         *Plaintiff*, <br><br>    v. <br><br> **NATIONAL RAILROAD PASSENGER CORPORATION a/k/a AMTRAK** <br> 60 Massachusetts Avenue <br> Washington, D.C. 20002 <br><br>     And <br><br> **BNSF RAILWAY COMPANY** <br> 2650 Lou Menk Drive <br> Fort Worth, TX 76131 <br><br>         *Defendants*. | Case No. <br><br><br><br> **JURY TRIAL DEMANDED** |

COMES NOW, Plaintiff, Jason Varnadoe, Individually and as Administrator of the Estates of Donald Varnadoe and Marjorie Varnadoe, by his undersigned counsel, and makes the following Complaint against Defendants, National Railroad Passenger Corporation a/k/a Amtrak ("Amtrak") and BNSF Railway Company ("BNSF"), and alleges as follows:

1

## INTRODUCTION[1]

1.        At approximately 4:00pm on September 25, 2021, Amtrak Empire Builder Train 7/27 derailed near Joplin, Montana at the East Buelow switch point killing at least three people and injuring dozens more.

2.        Donald Varnadoe and Marjorie Varnadoe were horrifically maimed and tragically killed in this preventable derailment.  Donald and Marjorie took the Amtrak Empire Builder journey to celebrate their 50th wedding anniversary and the lifetime of love they shared with each other.

3.        Amtrak Empire Builder Train 7/27, a two locomotive, ten passenger car train, departed from Chicago, Illinois on September 24, 2021.  At the time there were approximately 141 passengers and at least 14 crew members on board.

4.        Empire Builder Train 7/27 was set to travel from Chicago to Seattle, Washington and Portland, Oregon with numerous stops along the way.

5.        Throughout the entire journey, Empire Builder Train 7/27 was traveling on tracks owned, operated and maintained by Defendant BNSF Railway Company.

6.        When Empire Builder Train 7/27 derailed, the final four cars were violently thrown from the tracks and flipped onto their sides, with the last three becoming completely detached.

7.        At the time of the derailment, Donald and Marjorie were in the observation car, which, upon information and belief, was the seventh passenger car behind the two locomotives.

---

[1] The Parties have agreed that it is proper to consolidate this case with *Schneider, et al. v. National Railroad Passenger Corporation, et al.*, United States District Court for the Northern District of Illinois, No. 1:21-cv-05121 for purposes of discovery and trial.  Thus, a motion will be promptly filed on this issue.

8.      When the observation car derailed and was thrown from the tracks, Donald and Marjorie were violently slammed around the inside of the car and sustained excruciating, gruesome, and unspeakable injuries which ultimately resulted in their deaths.

9.      Donald and Marjorie are survived by their son, Jason Varnadoe, daughter-in-law, Millie, and young grandson, who will forever carry the burden of knowing their loving parents/grandparents endured unfathomable suffering before mercifully passing away as a result of Defendants' inexcusable failures.

10.     This accident and the death and destruction it caused was entirely preventable. Sadly, the September 25, 2021 derailment of Empire Builder Train 7/27 is but another in a long list of devastating and fatal train derailments caused by the negligence and carelessness of Defendants Amtrak and BNSF.



Observation car where Donald and Marjorie were killed

11.     Investigations led by the National Transportation Safety Board ("NTSB") are currently underway. The NTSB has confirmed that the entities involved in this tragedy are Amtrak

3

and BNSF, whose conduct is being examined along with extensive on-site examination of the tracks and train cars involved in the accident. The NTSB is also interviewing Amtrak and BNSF personnel.

12.    In its preliminary report, dated October 26, 2021, the NTSB concluded that the Amtrak Empire Builder Train was traveling between 75 and 78 miles per hour at the time of the derailment.

13.    The NTSB has also confirmed that a BNSF freight train traveled through this section of the railway tracks shortly before the derailment, and that BNSF personnel had last inspected the tracks in the area of the derailment as recently as two days before the accident.

14.    The NTSB's final report is not expected to be released for many months, but it will no doubt confirm that this tragedy was foreseeable, preventable, and the result of unacceptable and outrageous failures by Defendants Amtrak and BNSF.

<u>**PARTIES**</u>

15.    Plaintiff, Jason Varnado ("Plaintiff") is an adult individual and resident of the State of Georgia, residing at 187 Pierce Butler Drive, St. Simons Island, Georgia, 31522.

16.    Plaintiff brings this lawsuit on behalf of the Estates of Donald Varnadoe and Marjorie Varnadoe, his parents, as well as individually in his own right.

17.    Donald and Marjorie were beloved stalwarts of the closely knit St. Simons Island community of roughly 15,000 residents, having lived in the same St. Simons Island home since 1976.

18.    Donald was a veteran in the St. Simons Island and Brunswick, Georgia real estate industry, and Marjorie was a retired educator with the Glynn County public school system, serving

as a teacher, principal, personnel director, and assistant superintendent over the course of her long career.

19.     Marjorie's love for helping others and learning never ceased.  After dedicating her professional career to teaching and guiding the children in her local school system, Marjorie became a licensed yoga instructor and actively taught classes until her untimely and tragic passing.

20.     Donald was also dedicated to helping the children in their community and served on the local Glynn County School Board as part of his support for the Katz Whittle Foundation. The Katz Whittle Foundation Board recently voted to name the annual award presented to the most outstanding teacher in Glynn and McIntosh Counties "The Marjorie and Donald Varnadoe Award."  This award provides funding to the educator who does an exemplary job of teaching, encouraging, nurturing, and living the Golden Rule Law of Life.  The Marjorie and Donald Varnadoe Award will ensure the Varnadoe's life long desire to do good to others will continue to be fulfilled even after they are no longer here to do it themselves.

21.     During his tenure on the local School Board, Donald gave all of his checks back to the school system to further his passion for supporting the children at his local schools.

22.     Donald and Marjorie were active members of the St. Simons United Methodist Church where Donald served as a member of the church's finance committee and often volunteered as an usher during services.  For several years, Marjorie led the Stephen Ministry at the church, a group dedicated to helping members of the community who are "hurting or going through difficult times," according to Tom Jones, the church's pastor.

23.     Donald often led a group prayer at his office sales meetings, and Marjorie was beloved at Donald's office, often stopping by to bring flowers, brownies, and other gifts for Donald and his co-workers.

24.     Nobody embodied the St. Simons Island community the way Donald and Marjorie did—they were truly kind and loving people devoted to their community, their faith, and each other.

25.     Traveling on Amtrak Empire Builder Train 7/27 across the great American northwest was a dream vacation for Donald and Marjorie, who took the trip to celebrate their 50th wedding anniversary.  Donald was so excited about the trip that he researched it for months beforehand, watched countless YouTube videos, and told everyone at his office how it was the trip of a lifetime for him and Marjorie.

26.     Donald's and Marjorie's lives were guided by compassion, love, and kindness, but Defendants' unforgivable failures condemned Donald and Marjorie to hellacious and unrelenting suffering that consumed their final moments alive.



27.     Defendant, National Railroad Passenger Corporation a/k/a Amtrak ("Amtrak"), is a corporation organized and existing under the laws of the United States of America with its principal place of business located at 60 Massachusetts Avenue, Washington, D.C. 20002.

28.     At all times relevant hereto, Defendant Amtrak, by and through its railroad interests, has carried out, and continues to carry out, substantial, continuous, and systematic

business activities within the state of Illinois, and has purposely established significant contacts within Illinois.

29.     At all times relevant hereto, Defendant Amtrak was acting by and through its employees, servants, agents, workmen, and/or staff, all of whom were acting within the course and scope of their employment, for and on behalf of Defendant Amtrak.

30.     The injuries and damages alleged in this lawsuit arise out of, and are related to, Defendant Amtrak's contacts and activities in the State of Illinois.

31.     Defendant, BNSF Railway Company ("BNSF"), is a corporation or other legal entity existing under the laws of the State of Delaware, with its principal place of business located at 2650 Lou Menk Drive, Fort Worth, Texas 76131.

32.     At all times relevant hereto, Defendant BNSF, by and through its railroad interests, has carried out, and continues to carry out, substantial, continuous, and systematic business activities within the state of Illinois, and has purposely established significant contacts within Illinois.

33.     At all times relevant hereto, Defendant BNSF was acting by and through its employees, servants, agents, workmen, and/or staff, all of whom were acting within the course and scope of their employment, for and on behalf of Defendant BNSF.

34.     The injuries and damages alleged in this lawsuit arise out of, and are related to, Defendant BNSF's contacts and activities in the State of Illinois.

35.     At all times relevant hereto, Defendant Amtrak was the owner, operator, maintainer, possessor, lessor, controller and/or otherwise responsible for the care, control, and safe operation of the locomotive and passenger cars comprising the Empire Builder Train 7/27 involved in the accident.

36.     Upon information and belief, at all times relevant hereto, Defendant BNSF was the owner, operator, maintainer, possessor, lessor, controller and/or otherwise responsible for the care and control of the train tracks and switch point at and/or around the railway where this accident occurred near Joplin, Montana and on which Empire Builder Train 7/27 was traveling at the time it was caused to derail.

## JURISDICTION AND VENUE

37.     This Court has specific jurisdiction over Plaintiff's action pursuant to 28 U.S.C. § 1332(a) as the amount in controversy exceeds the jurisdictional threshold, exclusive of costs, is between citizens of different states, and because the Defendants each have certain minimum contacts with the State of Illinois such that the maintenance of the suit in this district does not offend traditional notions of fair play and substantial justice, and because the injuries and damages alleged herein arise out of, and are related to, Defendants' contacts and activities in the State of Illinois.

38.     Donald and Marjorie boarded Amtrak's Empire Builder train in Chicago, Illinois, relying on Amtrak's assurance that they would be carried safely across the country.

39.     Amtrak and BNSF employed workers and personnel at the train station in Chicago, Illinois to assist passengers boarding the Empire Builder train, including Donald and Marjorie.

40.     Defendant Amtrak's contacts and activities in the State of Illinois, and specifically in Chicago, Illinois, directly gave rise to the injuries and damages suffered by Donald and Marjorie, their Estates, and their beneficiaries, as alleged herein, as Donald and Marjorie boarded Empire Builder Train 7/27 in Chicago, Illinois and this Court thus has specific personal jurisdiction over Defendant Amtrak in this action.

41.     Defendant BNSF's contacts and activities in the State of Illinois, and specifically in Chicago, Illinois, directly gave rise to the injuries and damages suffered by Donald and Marjorie, their Estates, and their beneficiaries, as alleged herein, as Defendant BNSF owns the railroad tracks in Chicago, Illinois on which Empire Builder Train 7/27 began its journey from Chicago's Union Station, and Defendant BNSF also operates the rail service on its railroad tracks in Chicago utilizing its own crews, personnel, and employees and this Court thus has specific personal jurisdiction over Defendant BNSF in this action.

42.     Defendant BNSF's own Network Map confirms that BNSF owns the railroad tracks on which the Empire Builder line operates, originating in Union Station, Chicago:



43.     The website for Metra, the commuter rail system in the Chicago metropolitan area, confirms that, "[t]oday, BNSF Railway still owns the BNSF line, and operates the commuter rail service with its own crews under a purchase-of-service agreement with Metra."

44.     Defendant BNSF's ownership and operation of the railroad lines originating in Chicago's Union Station and on which Empire Builder Train 7/27 operated and began its journey

directly gave rise to the injuries and damages suffered by Plaintiff and the Estates of Donald and Marjorie Varnadoe, as alleged herein.

45.     Defendants Amtrak and BNSF derived a financial benefit through their ownership and operation of the railroad tracks and railroad cars which carried Empire Builder Train 7/27 and Donald and Marjorie Varnadoe.

46.     Amtrak's Empire Builder train runs along rail lines owned, operated, and controlled by BNSF.

47.     Amtrak and BNSF entered into a joint venture whereby Amtrak's Empire Builder train was permitted to operate and run along BNSF's rail lines.

48.     Amtrak and BNSF formed this joint venture with the common purpose of profiting from cross-country rail traffic, including from Donald and Marjorie Varnadoe.

49.     Amtrak and BNSF share in the profits and losses of this joint venture.

50.     Amtrak and BNSF jointly manage and control this joint venture, namely the travel of the Empire Builder train along BNSF's transnational rail line.

51.     Defendants, Amtrak and BNSF, jointly and individually, are subject to personal jurisdiction in Illinois, as Defendants have substantial business contacts with Illinois, their joint venture has substantial business contacts with Illinois, and Plaintiff's claims, in part, arise directly from Defendants' joint venture contacts in Illinois.

52.     There is thus specific personal jurisdiction over Defendants Amtrak and BNSF pursuant to Illinois' long arm statute, 735 ILCS 5/2-209.

53.     This Court also has jurisdiction over this action pursuant to 28 U.S.C. § 1349, as the United States is the owner of more than one-half of Defendant Amtrak's capital stock.

54.     Venue is proper in the United States District Court for the Northern District of Illinois (Eastern Division) pursuant to 28 U.S.C. § 1391(b) as a substantial portion of the acts, omissions, and events giving rise to Plaintiff's claim occurred in and around this district.

### THE CATASTROPHIC DERAILMENT OF EMPIRE BUILDER TRAIN 7/27

55.     On September 24, 2021, Donald and Marjorie Varnadoe boarded Amtrak Empire Builder Train 7/27 in Chicago, Illinois and set out on what was supposed to be a two-day journey across the American Northwest in celebration of their 50th wedding anniversary.

56.     Amtrak advertises the journey of the Empire Builder as a "grand adventure" where passengers will "marvel at the majesty of the northern United States as you travel over mountain passes, through alpine valleys and past 7,000-year-old glaciers."

57.     Donald and Marjorie put their lives in Defendants' hands as they set out on their journey.

58.     Upon information and belief, Defendant BNSF owned, managed, maintained, and operated the tracks on which the Empire Builder Train traveled from the inception of its trip in Chicago, Illinois until its planned destinations of Portland, Oregon and Seattle, Washington.

59.     On the second day of the trip, on September 25, 2021, at approximately 4:00 p.m., the Empire Builder Train approached the BNSF East Buelow switch point near Joplin, Montana.

60.     Upon information and belief, approximately 80 minutes prior to the Empire Builder Train approaching and traveling through the East Buelow switch point, a BNSF freight train passed through the same area on the same tracks.

61.     At the time of the derailment, the air temperature in Joplin, Montana was in the mid-eighties, and the subject railroad tracks were approximately 20 to 30 degrees hotter, which is within the range of what should be normally anticipated for railway tracks in this area and for

which the railway tracks should be able to withstand without buckling, degrading or becoming damaged in any way.

62.     Track buckling is an occurrence that is known to Defendants Amtrak and BNSF, and Defendants had a duty to ensure that a neutral rail temperature was maintained and to monitor the condition of the rails to ensure that no track buckling occurred and to put in place policies and procedures to ensure that this was accomplished.

63.     Defendants Amtrak and BNSF had an obligation to prevent any trains, including the Empire Builder Train 7/27, from traveling on their tracks unless Defendants could ensure that the tracks were safe.

64.     At the time of the derailment, Donald and Marjorie were sitting in the observation car enjoying each other's company and the views.

65.     Upon information and belief the observation car was the seventh passenger car behind the two locomotives.

66.     Upon information and belief, at the time Empire Builder Train 7/27 derailed it was traveling approximately 75-78 miles per hour around a gradual right-hand curve immediately prior to the East Buelow switch point.

67.     Upon information and belief, the derailment sequence began when the locomotives traversed a section of damaged and dangerous tracks which forcefully jolted the trailing ten (10) passenger cars, including the observation car where Donald and Marjorie were seated.

68.     Upon information and belief, from the moment the first jolt was felt when the locomotives traversed the damaged and dangerous track, Donald and Marjorie were forcefully thrown about inside the observation car and were immediately caused to fear for their lives.

69.     After the two locomotives and the first three passenger cars traversed the damaged and dangerous tracks near the East Buelow switch point, the remaining seven passenger cars detached and the sixth-tenth passenger cars, including the observation car, derailed.

70.     The observation car where Donald and Marjorie were seated was launched from the tracks and flipped onto its side where it violently ground to a halt over the course of several hundred feet.

71.     The final three passenger cars were also derailed and flipped onto their side.

72.     All three people who died, including Donald and Marjorie, were seated in the observation car.



**Observation car where Donald and Marjorie were killed**



73.     Upon information and belief, the entire derailment sequence spanned hundreds to thousands of feet and a considerable amount of time.

74.     When the observation car derailed and was launched from the tracks, Donald and Marjorie were violently tossed about inside the car, slamming into the metal seats and structures within the passenger compartment, sustaining excruciating and ultimately fatal injuries.

75.     This tragedy and the immense destruction, loss of life, and suffering inflicted on Donald and Marjorie, and many others, should have never happened.

76.     Upon information and belief, upon approach to the BNSF East Buelow switch point, the operator of Empire Builder Train 7/27 could have but failed to observe track buckling that had occurred, and further failed to appropriately respond to the apparent track buckling.

77.     The investigation of this tragedy is at its early stages, however, upon information and belief, Empire Builder Train 7/27 derailed as a result of a defective and/or poorly maintained railway track and/or switch and/or negligent and improper track maintenance/inspections and/or negligent, grossly negligent, and/or reckless locomotive operation, and/or inadequate, ill-maintained, inoperable and/or malfunctioning Positive Train Control systems on the BNSF tracks and/or Amtrak's train cars.

78.   Furthermore, this tragedy occurred due to the systematic failures of Amtrak to have an adequate culture in place to ensure safety on its railways.

79.   The September 25, 2021 Amtrak Empire Builder Train 7/27 derailment is the latest chapter in Amtrak's long history of tragic train accidents and culture of disregard for the safety and lives of its passengers.

80.   On May 12, 2015, Amtrak Train 188 derailed near Philadelphia, Pennsylvania, killing eight passengers and injuring over 200.



81.   On March 14, 2016, the Amtrak Southwest Chief train derailed near Cimarron, Kansas, injuring 28 passengers.



82. On April 3, 2016, Amtrak Train 89, known as the Palmetto, struck a backhoe and derailed just south of Philadelphia, Pennsylvania, killing two.



83. On December 18, 2017, the Amtrak Cascades Train 501 derailed near DuPont, Washington, killing three and injuring 65 passengers.



84. On February 4, 2018, Amtrak Regional Rail Train 91 train failed to properly navigate a railroad switch near Cayce, South Carolina and collided with a freight train, killing two and injuring scores of passengers.



85.     Outrageously, this is not the first time that Amtrak's Empire Builder train has derailed along the same stretch of track in Montana.  The Empire Builder train has derailed numerous times in Montana, including:

- **March 28, 1979** – Empire Builder derailed in Lohman, Montana injuring 48 people.  The NTSB determined that Amtrak's and BNSF's inadequate maintenance and inspections were a cause of the derailment.
- **March 14, 1980** – Empire Builder derailed in Glacier Park, Montana injuring 115 people.  The NTSB determined that Amtrak's and BNSF's inadequate maintenance and inspection of the tracks caused the derailment.
- **August 5, 1988** – Empire Builder derailed in Saco, Montana injuring over 100 people.  The NTSB determined that Amtrak's and BNSF's inadequate maintenance and inspection of the tracks and track buckling caused the derailment.

86.     Amtrak's and BNSF's repeated failures to ensure the safety of the Empire Builder tracks in Montana despite the numerous devastating derailments noted above is reckless, utterly outrageous, and demonstrates a wanton and willful disregard of the health and safety of the passengers, including Donald and Marjorie Varnadoe.

87.     Tragically, Amtrak has failed to learn from these prior deadly and devastating accidents and has continuously failed to ensure that its trains are operated safely and continues to put passengers at risk of catastrophic injury and death each time they board an Amtrak train.

88. Amtrak and BNSF owed the highest duty of care to the passengers aboard Empire Builder Train 7/27, including Donald and Marjorie Varnadoe, to ensure that the train is operated properly and safely and that all tracks, equipment, and switches are properly and safely maintained, inspected, and repaired and in good and safe working condition.

89. Defendants Amtrak and BNSF failed to fulfill their aforementioned duties and caused the deadly derailment of Amtrak Empire Builder Train 7/27 on September 25, 2021.

90. During the derailment of Empire Builder Train 7/27, Donald and Marjorie Varnadoe were horrifically maimed and killed.

91. As a direct and proximate result of Defendants, Amtrak's and BNSF's carelessness, negligence, gross negligence, recklessness and other liability-producing conduct, Donald Varnadoe suffered serious, severe, and disabling injuries including, but not limited to his death resulting from excruciating impact trauma; mental and emotional pain and suffering and fear of impending death; unbearable and unimaginable physical pain and suffering; a permanent loss of enjoyment of life and a permanent loss of life's pleasures; loss of earnings and earning capacity and he has been permanently prevented from performing all of his usual duties, occupations, recreational activities and avocations, all to his and his beneficiaries' loss and detriment.

92. As a direct and proximate result of Defendants, Amtrak's and BNSF's carelessness, negligence, gross negligence, recklessness and other liability-producing conduct, which resulted in the death of Donald Varnadoe, his beneficiaries have in the past and will in the future continue to suffer great pecuniary loss, including but not limited to, loss of financial and emotional support, loss of aid, loss of services, loss of companionship, loss of consortium and comfort, loss of counseling and loss of guidance and tutelage.

93.     As a direct and proximate result of Defendants, Amtrak's and BNSF's carelessness, negligence, gross negligence, recklessness and other liability-producing conduct, which resulted in the death of Donald Varnadoe, his beneficiaries have suffered damages due to mental pain, anguish, grief, and the loss of future support and services.

94.     As a direct and proximate result of Defendants, Amtrak's and BNSF's carelessness, negligence, gross negligence, recklessness and other liability-producing conduct, decedent Donald Varnadoe's beneficiaries have incurred or have been caused to incur and pay large and various expenses for various funeral, burial and estate administration expenses for which Plaintiff is entitled to compensation.

95.     As a direct and proximate result of Defendants, Amtrak's and BNSF's carelessness, negligence, gross negligence, recklessness and other liability-producing conduct, Plaintiff claims all damages suffered by the Estate of Donald Varnadoe by reason of his death, including, without limiting the generality thereof, the following: the severe injuries to Donald, which resulted in his death; the anxiety, horror, fear of impending death, mental disturbance, pain, suffering and other intangible losses which Donald suffered prior to his death; the loss of future earning capacity suffered by Donald from the date of his death until the time in the future that he would have lived had he not died as a result of the injuries he sustained; and the loss and total limitation and deprivation of his normal activities, pursuits and pleasures from the date of his death until such time in the future as he would have lived had he not died as a result of the injuries sustained by reason of the carelessness, negligence, gross negligence, recklessness and other liability-producing conduct of Defendants Amtrak and/or BNSF.

96.     As a direct and proximate result of Defendants, Amtrak's and BNSF's carelessness, negligence, gross negligence, recklessness and other liability-producing conduct, Plaintiff has

been forced to suffer profound grief and emotional and psychological injuries as a result of the death of his father, Donald Varnadoe.

97.      As a direct and proximate result of Defendants, Amtrak's and BNSF's carelessness, negligence, gross negligence, recklessness and other liability-producing conduct, Marjorie Varnadoe suffered serious, severe, and disabling injuries including, but not limited to her death resulting from excruciating impact trauma; mental and emotional pain and suffering and fear of impending death; unbearable and unimaginable physical pain and suffering; a permanent loss of enjoyment of life and a permanent loss of life's pleasures; loss of earnings and earning capacity and she has been permanently prevented from performing all of her usual duties, occupations, recreational activities and avocations, all to her and her beneficiaries' loss and detriment.

98.      As a direct and proximate result of Defendants, Amtrak's and BNSF's carelessness, negligence, gross negligence, recklessness and other liability-producing conduct, which resulted in the death of Marjorie Varnadoe, her beneficiaries have in the past and will in the future continue to suffer great pecuniary loss, including but not limited to, loss of financial and emotional support, loss of aid, loss of services, loss of companionship, loss of consortium and comfort, loss of counseling and loss of guidance and tutelage.

99.      As a direct and proximate result of Defendants, Amtrak's and BNSF's carelessness, negligence, gross negligence, recklessness and other liability-producing conduct, which resulted in the death of Marjorie Varnadoe, her beneficiaries have suffered damages due to mental pain, anguish, grief, and the loss of future support and services.

100.      As a direct and proximate result of Defendants, Amtrak's and BNSF's carelessness, negligence, gross negligence, recklessness and other liability-producing conduct, decedent Marjorie Varnadoe's beneficiaries have incurred or have been caused to incur and pay large and

various expenses for various funeral, burial and estate administration expenses for which Plaintiff is entitled to compensation.

101.    As a direct and proximate result of Defendants, Amtrak's and BNSF's carelessness, negligence, gross negligence, recklessness and other liability-producing conduct, Plaintiff claims all damages suffered by the Estate of Marjorie Varnadoe by reason of her death, including, without limiting the generality thereof, the following: the severe injuries to Marjorie, which resulted in her death; the anxiety, horror, fear of impending death, mental disturbance, pain, suffering and other intangible losses which Marjorie suffered prior to her death; the loss of future earning capacity suffered by Marjorie from the date of his death until the time in the future that she would have lived had she not died as a result of the injuries she sustained; and the loss and total limitation and deprivation of her normal activities, pursuits and pleasures from the date of her death until such time in the future as she would have lived had she not died as a result of the injuries sustained by reason of the carelessness, negligence, gross negligence, recklessness and other liability-producing conduct of Defendants Amtrak and/or BNSF.

102.    As a direct and proximate result of Defendants, Amtrak's and BNSF's carelessness, negligence, gross negligence, recklessness and other liability-producing conduct, Plaintiff has been forced to suffer profound grief and emotional and psychological injuries as a result of the death of his mother, Marjorie Varnadoe.

103.    The injuries and damages suffered and claimed by Plaintiff, individually and as Administrator of the Estates of Donald and Marjorie Varnadoe, were caused solely by the acts of Defendant Amtrak and/or Defendant BNSF, jointly and/or individually and/or through their joint and individual agents, servants, workmen and/or employees as set forth herein, and not through any act or omission on Plaintiff's or his decedents' part.

21

104.    Defendants Amtrak and BNSF are jointly and severally liable for the injuries and damages suffered by Plaintiff and the Estates of Donald and Marjorie Varnadoe.

## CLAIMS ALLEGED

## COUNT I – NEGLIGENCE

### PLAINTIFF, JASON VARNADOE, Individually and as Administrator of the ESTATES OF DONALD VARNADOE AND MARJORIE VARNADOE v. NATIONAL RAILROAD PASSENGER CORPORATION a/k/a AMTRAK

105.    All preceding paragraphs of this Complaint are incorporated herein by reference the same as though fully set forth herein.

106.    Defendant Amtrak was the owner, operator, maintainer, possessor, lessor, controller and/or otherwise responsible for the care, control, and operation of the Empire Builder Train 7/27 involved in this accident.

107.    As the owner and operator of Empire Builder Train 7/27, Defendant Amtrak had a duty to ensure that the train was operated safely, carefully, and competently and in such a way so as to not endanger its passengers and had a duty to hire, train and/or retain competent personnel to operate its locomotives, including the locomotive involved in this accident.

108.    Amtrak had a duty to ensure that all rail lines on which its trains traveled were in good and safe condition and would not pose a danger or hazard to the passengers on Amtrak's trains, especially on the Empire Builder line where an Amtrak train had previously derailed numerous times in Montana on the exact same rail line.

109.    Amtrak had a duty to ensure that Empire Builder Train 7/27 was properly inspected and maintained in good and safe condition and was capable of safely completing its journey without endangering the passengers aboard.

110. Amtrak had a duty to ensure that Empire Builder Train 7/27 was adequately crashworthy and capable of protecting its passengers in the event of a derailment or crash.

111. Amtrak owed its passengers, including Donald and Marjorie Varnadoe, the highest duty of care under the law to ensure their safety during their travels.

112. Amtrak had a duty to ensure that a neutral rail temperature was maintained for the rails on which the Empire Builder Train was traveling in order to prevent track buckling and to enact policies and procedures designed to ensure that a neutral rail temperature was maintained.

113. Amtrak had a duty to monitor the rail conditions on tracks that it was operating the Empire Builder Train.

114. Amtrak had a duty to prevent its trains, including the Empire Builder Train, from traveling over any rails for which a neutral rail temperature was not maintained and confirmed due to the risk of track buckling.

115. The operator of Amtrak Empire Builder Train 7/27 had a duty to observe the condition of the rails on which he was operating the train, including the duty to observe and respond appropriately to track buckling, and to ensure that he did not operate the train on any damaged or dangerous tracks or tracks that had buckled.

116. The 1988 derailment of the Empire Builder train on the same portion of tracks in Montana was caused by track buckling and the derailments in 1979 and 1980 were caused by inadequate track maintenance, repair, and inspection.

117. Knowing that track buckling was a risk and could and indeed did occur on this very stretch of tracks in Montana, Amtrak had a duty to enact and enforce policies and procedures to prevent track buckling or, at a minimum, ensure that no trains were operated on tracks that were buckled and dangerous.

118.    Donald and Marjorie Varnadoe and other passengers on Empire Builder Train 7/27 trusted Amtrak with their lives as they rode as passengers on the train with no ability to control the operation themselves or prevent this catastrophic derailment.

119.    Defendant Amtrak breached these aforementioned duties and as a result, caused this derailment and the injuries and damages alleged herein.

120.    Amtrak, by and through its employees and/or agents, caused the injuries and damages sustained by Plaintiff and acted carelessly, negligently, grossly negligently, recklessly, and outrageously through the following actions and/or inactions:

a.      Operating the Empire Builder Train too fast for the conditions then and there existing;

b.      Failing to slow down as the Empire Builder Train approached the East Buelow track switch;

c.      Failing to appreciate the damaged and/or dangerous condition of the tracks approaching the East Buelow track switch;

d.      Failing to slow down as the Empire Builder Train passed through the East Buelow track switch;

e.      Improperly and/or unsafely traversing the area in the vicinity of the East Buelow track switch;

f.      Failing to appreciate the damaged and/or dangerous condition of the track switch at the location of the accident;

g.      Failing to properly inspect, maintain, and/or repair the tracks on which the Empire Builder Train was traveling;

h.      Failing to observe, appreciate, and/or correct the hazardous conditions which caused this derailment;

i.      Failing to ensure that the tracks on which the Empire Builder Train were traveling were in good and safe condition prior to the derailment;

j.      Failing to ensure that the tracks on which the Empire Builder Train were traveling were in good and safe condition prior to the derailment despite knowing that there was a previous derailment on the Empire Builder rail line in Montana and despite knowing that such a failure would expose its passengers, including Donald and Marjorie Varnadoe, to an unreasonable and unacceptable risk of severe injury or death;

k.      Failing to discover and thereafter warn Donald and Marjorie Varnadoe of the damaged and/or dangerous condition of the tracks approaching the East

Buelow track switch despite knowing that such a failure would expose its passengers, including Donald and Marjorie Varnadoe, to an unreasonable and unacceptable risk of severe injury or death;

l. Failing to timely perform inspections, maintenance, and/or repairs to the railroad tracks at the location of the accident;

m. Failing to safely navigate the tracks leading up to and at the location of the derailment;

n. Failing to ensure and maintain a neutral rail temperature for the tracks;

o. Failing to prevent track buckling;

p. Failing to observe and appropriately respond to track buckling;

q. Failing to monitor the rail conditions prior to the accident;

r. Failing to appropriately respond to the rail conditions prior to the accident;

s. Failing to stop the train before operating it over buckled tracks;

t. Failing to enact and enforce policies and procedures to address the known risk of track buckling on this stretch of tracks in Montana despite knowing that the Empire Builder train derailed in 1979, 1980, and 1988 on this very stretch of tracks due to track buckling and inadequate track maintenance, repair, and inspection, and despite knowing that such a failure would expose passengers, including Donald and Marjorie Varnadoe, to an unreasonable and unacceptable risk of severe injury or death;

u. Failing to adequately communicate and coordinate with Defendant BNSF regarding the condition of the tracks on which the Empire Builder Train was traveling;

v. Failing to adequately communicate and coordinate with Defendant BNSF regarding inspection, maintenance, and upkeep of the tracks on which the Empire Builder Train was traveling;

w. Failing to adequately train the operator and crew of the Empire Builder Train;

x. Hiring incompetent operators, engineers and/or crew to operate the Empire Builder Train;

y. Failing to properly inspect the Empire Builder Train;

z. Failing to observe, appreciate, and/or correct the hazardous condition(s) of the Empire Builder Train that caused and/or contributed to this derailment;

aa. Failing to ensure that the Empire Builder Train was equipped with all appropriate, necessary, and adequate Positive Train Control systems;

bb. Failing to properly inspect and appreciate the conditions of the track switch;

cc. Failing to properly inspect, maintain, and/or repair the signal system at and/or around the location of the derailment;

25

dd.  Failing to have properly trained personnel inspect the condition of the Empire Builder Train's Positive Train Control systems;

ee.  Violating governmental statutes, regulations, and requirements with respect to the train and train system in question;

ff.  Allowing improperly trained, incompetent and unqualified personnel to operate the Empire Builder Train;

gg.  Failing to adequately assess the condition and position of the track switch before operating the Empire Builder Train over the track switch;

hh.  Failing to comply with Amtrak's own safety, operating, and other rules, procedures, and regulations;

ii.  Failing to adequately maintain the tracks upon which its train was traveling;

jj.  Failing to adequately inspect the tracks upon which its train was traveling;

kk.  Failing to have adequate rules and procedures in place to prevent this tragedy from occurring;

ll.  Promoting and maintaining a culture of safety ignorance and noncompliance;

mm.  Failing to comply with the rules of the Northeast Operating Rules Advisory Committee;

nn.  Failing to comply with the Rail Safety Improvement Act; and

oo.  Failing to comply with the Federal Locomotive Inspection Act.

121.  Through the actions and inactions described above, Defendant Amtrak is responsible for the severe injuries to and deaths of Donald and Marjorie Varnadoe.

**WHEREFORE**, Plaintiff demands judgment against Defendant, National Railroad Passenger Corporation a/k/a Amtrak for such damages as may be permitted pursuant to applicable law, including all compensatory and punitive damages, together with interest, costs, and attorneys' fees, and all other relief that this Court deems just and appropriate.

**COUNT II – NEGLIGENCE**

**PLAINTIFF, JASON VARNADOE, Individually and as Administrator of the ESTATES OF DONALD VARNADOE AND MARJORIE VARNADOE v. BNSF RAILWAY COMPANY**

122. All preceding paragraphs of this Complaint are incorporated herein by reference the same as though fully set forth herein.

123. Defendant BNSF owns the train tracks of the Empire Builder line, which originates in Chicago and terminates in Portland and Seattle.

124. Upon information and belief, Defendant BNSF owns, maintains, and operates the train tracks where the Empire Builder Train began its journey in Chicago, Illinois and throughout the entire travel route.

125. As the owner of the train tracks of the Empire Builder line, Defendant BNSF had a duty to inspect, maintain, and repair the train tracks and all associated components and equipment, including track switches and signal systems, were in good and safe condition at all times, especially where a train on the Empire Builder line had previously derailed in Montana.

126. Defendant BNSF had a duty to ensure that its train tracks were safe for use by passenger rail cars, including the Empire Builder Train.

127. Defendant BNSF had a duty to ensure that trains, including Empire Builder Train 7/27, would not be permitted to operate on tracks that were damaged, dilapidated, in need of repair, and/or were otherwise dangerous and hazardous.

128. Defendant BNSF had a duty to notify and warn all companies operating passenger trains on its train tracks, including Amtrak and its Empire Builder Train, and all of its passengers, of any tracks that were damaged, dilapidated, in need of repair, and/or were otherwise dangerous and hazardous.

129.    Defendant BNSF had a duty to ensure that its tracks were equipped with all necessary equipment and technology, such as Positive Train Control, to ensure that the passengers aboard trains traveling the tracks would be safe and protected from derailments and accidents.

130.    Defendant BNSF had a duty to repair, maintain, correct, inspect and otherwise be responsible for the area at and/or around the East Buelow track switch.

131.    Defendant BNSF had a duty to ensure that a neutral rail temperature was maintained for the rails on which the Empire Builder Train was traveling in order to prevent track buckling and to enact policies and procedures designed to ensure that a neutral rail temperature was maintained.

132.    Defendant BNSF had a duty to monitor the rail conditions on the tracks that it owned and operated.

133.    Defendant BNSF had a duty to prevent its trains, including the Empire Builder Train, from traveling over any rails for which a neutral rail temperature was not maintained and confirmed due to the risk of track buckling.

134.    The operator of BNSF freight train that passed through the area of the accident prior to Empire Builder Train 7/27 had a duty to observe the condition of the rails on which he was operating, including the duty to observe and respond appropriately to track buckling, and to ensure trains were not thereafter operated on any damaged or dangerous tracks or tracks that had buckled.

135.    The 1988 derailment of the Empire Builder train on the same portion of tracks in Montana was caused by track buckling and the derailments in 1979 and 1980 were caused by inadequate track maintenance, repair, and inspection.

136.    Knowing that track buckling was a risk and could and indeed did occur on this very stretch of tracks in Montana, BNSF had a duty to enact and enforce policies and procedures to

prevent track buckling or, at a minimum, ensure that no trains were operated on tracks that were buckled and dangerous.

137.     Defendant BNSF breached these aforementioned duties and as a result, caused this derailment and the injuries and damages alleged herein.

138.     Upon information and belief, Defendant BNSF inspected the tracks in the area of this accident on or about Thursday, September 23, 2021.

139.     Upon information and belief, during the aforementioned September 23, 2021 inspection, Defendant BNSF failed to observe, appreciate, and/or correct the hazards that resulted in this tragedy, including but not limited to track buckling.

140.     Upon information and belief, as a result of the September 23, 2021 inspection, Defendant BNSF should have made immediate repairs or taken other immediate action in response to the hazards that were or should have been observed, but failed to do so, despite knowing or being in the position to know that such a failure would expose passengers on the tracks, including Donald and Marjorie Varnadoe, to an unreasonable and unacceptable risk of severe injury and/or death.

141.     Upon information and belief, approximately 80 minutes prior to this tragedy a BNSF freight train traveled through the area of the accident on the same tracks and exacerbated the dangerous condition of the tracks which caused this accident.

142.     Defendant BNSF, by and through its agents, servants and/or employees, caused the injuries and damages sustained by Plaintiff, and acted carelessly, negligently, grossly negligently and/or recklessly through the following actions and/or inactions:

        a.      Failing to provide a reasonably safe railroad track;

        b.      Allowing its railroad tracks and associated equipment and components, including track switches and signal systems, to exist in a dangerous, dilapidated, and dis-repaired condition;

29

c.     Failing to properly and adequately inspect, maintain and/or repair the railroad tracks and/or track systems;

d.     Failing to observe, appreciate, and/or correct the hazards that resulted in this tragedy;

e.     Failing to observe, appreciate, and/or correct the hazards that resulted in this tragedy despite having the opportunity to do so just days before the accident;

f.     Appreciating and recognizing the need for repairs to the railroad tracks at the location of this accident but failing to timely perform said repairs or ensure that no trains traveled on the tracks until such time that the repairs could be made;

g.     Failing to have properly trained and competent personnel inspect the condition of the railroad tracks and/or track system prior to this accident;

h.     Failing to ensure that the tracks on which the Empire Builder Train were traveling were in good and safe condition prior to the derailment;

i.     Failing to ensure that the tracks on which the Empire Builder Train were traveling were in good and safe condition prior to the derailment despite knowing that there was a previous derailment on the Empire Builder rail line in Montana and despite knowing that such a failure would expose passengers, including Donald and Marjorie Varnadoe, to an unreasonable and unacceptable risk of severe injury or death;

j.     Failing to discover and thereafter warn Donald and Marjorie Varnadoe of the damaged and/or dangerous condition of the tracks approaching the East Buelow track switch despite knowing that such a failure would expose its passengers, including Donald and Marjorie Varnadoe, to an unreasonable and unacceptable risk of severe injury or death;

k.     Failing to timely perform inspections, maintenance, and/or repairs to the railroad tracks at the location of the accident;

l.     Failing to ensure that trains traveling on its railroad tracks, including the Empire Builder Train, could safely navigate the tracks;

m.     Failing to ensure and maintain a neutral rail temperature for the tracks;

n.     Failing to prevent track buckling;

o.     Failing to observe and appropriately respond to track buckling;

p.     Failing to monitor the rail conditions prior to the accident;

q.     Failing to appropriately respond to the rail conditions prior to the accident;

r.     Failing to stop the train before operating it over buckled tracks;

s.     Failing to enact and enforce policies and procedures to address the known risk of track buckling on this stretch of tracks in Montana despite knowing that the Empire Builder train derailed in 1979, 1980, and 1988 on this very stretch of tracks due to track buckling and inadequate track maintenance,

30

repair, and inspection, and despite knowing that such a failure would expose passengers, including Donald and Marjorie Varnadoe, to an unreasonable and unacceptable risk of severe injury or death;

t.  Failing to adequately communicate with Defendant Amtrak regarding inspection, maintenance, and upkeep of the tracks on which the Empire Builder Train was traveling;

u.  Failing to adequately communicate and coordinate with Defendant Amtrak regarding the condition of the tracks on which the Empire Builder Train was traveling;

v.  Failing to properly and safely operate the East Buelow track switch;

w.  Failing to properly and safely operate the signal system(s) leading up to and located at the East Buelow track switch;

x.  Failing to adequately assess the condition and position of the track switch before permitting the Empire Builder Train to travel over the track switch;

y.  Failing to perform required inspections of tracks/track system/switch question;

z.  Failure to implement proper precautions to prevent the derailment;

aa.  Failing to ensure that the railroad tracks in the area of the accident were equipped with all appropriate, necessary, and adequate Positive Train Control systems and technology;

bb.  Failing to ensure that properly trained and competent personnel inspected the condition of the Positive Train Control systems and technology pertaining to the tracks at the location of the accident to ensure that such systems and technology were properly functioning;

cc.  Damaging and/or exacerbating existing damage the railroad tracks at the location of the accident through operation of its freight train(s) shortly before this accident;

dd.  Failing to observe, appreciate, and/or correct damage done to the railroad tracks at the location of the accident caused by Defendant's operation of its freight train(s) shortly before this accident;

ee.  Failing to warn Amtrak and/or Donald and Marjorie Varnadoe of the damage done to the railroad tracks at the location of the accident caused by Defendant's operation of its freight train(s) shortly before this accident;

ff.  Failing to shut down the railroad tracks at the location of this accident before it occurred so that critical and necessary repairs could be made to the tracks;

gg.  Failing to properly and safely manage and supervise its railroad operations;

hh.  Promoting and maintaining a culture of safety ignorance and noncompliance;

ii.  Failing to comply with the rules of the Northeast Operating Rules Advisory Committee;

31

jj.     Failing to adequately inspect the track in the area of this tragedy;

kk.    Failing to adequately maintain the track in the area of this tragedy;

ll.      Failing to comply with the Rail Safety Improvement Act (RSIA); and

mm.   Failing to comply with the Federal Locomotive Inspection Act.

143.    Through the actions and inactions described above, Defendant BNSF is responsible for the severe injuries to and deaths of Donald and Marjorie Varnadoe.

**WHEREFORE**, Plaintiff demands judgment against Defendant BNSF Railway Company for such damages as may be permitted pursuant to applicable law, including all compensatory and punitive damages, together with interest, costs, and attorneys' fees, and all other relief that this Court deems just and appropriate.

## COUNT III – WRONGFUL DEATH

### PLAINTIFF, JASON VARNADOE, Individually and as Administrator of the ESTATE OF DONALD VARNADOE v. NATIONAL RAILROAD PASSENGER CORPORATION a/k/a AMTRAK AND BNSF RAILWAY COMPANY

144.    All preceding paragraphs of this Complaint are incorporated herein by reference the same as though fully set forth herein.

145.    As a direct and proximate result of Defendants' negligence, gross negligence, carelessness, recklessness, and/or other liability producing conduct, Donald Varnadoe was tragically killed in the derailment of Empire Builder Train 7/27.

146.    Donald is survived by his son, Plaintiff, Jason Varnadoe and Jason's wife and young son.

147.    Plaintiff brings this claim pursuant to the Illinois Wrongful Death Act, 740 ILCS 180/1, *et seq.* and claims all benefits and recoverable damages under the Illinois Wrongful Death Act on behalf of all other persons entitled to recover under law.

148.    By reason of the death of Donald Varnadoe, caused by the aforementioned negligence, gross negligence, carelessness, and/or recklessness of Defendants, his beneficiaries have in the past and will in the future continue to suffer great pecuniary and intangible losses, including but not limited to, loss of financial and emotional support, loss of aid, loss of services, loss of companionship, loss of consortium and comfort, loss of counseling and loss of guidance and tutelage.

149.    By reason of the death of Donald Varnadoe, caused by the aforementioned negligence, gross negligence, carelessness, and/or recklessness of Defendants, his beneficiaries have in the past and will in the future continue to suffer unfathomable grief and emotional and psychological pain.

150.    By reason of the death of Donald Varnadoe, caused by the aforementioned negligence, gross negligence, carelessness, and/or recklessness of Defendants, his beneficiaries have suffered the loss of future earnings and wages that would have been earned by Donald Varnadoe from the date of his death until the time in the future that he would have lived had he not died as a result of the injuries sustained.

151.    By reason of the death of Donald Varnadoe, caused by the aforementioned negligence, gross negligence, carelessness, and/or recklessness of Defendants, his beneficiaries have incurred or have been caused to incur and pay large and various expenses for medical treatment, hospital care and medicine rendered to decedent until the time of his death and to incur various funeral, burial, and estate and administration expenses for which Plaintiff is entitled to compensation.

152.     In the alternative, to the extent a Court were to determine that Montana law were to apply to the damages in this litigation, Plaintiff asserts the damages recoverable in accordance with § 27-1-513, MCA and brings this action to recover the same.

**WHEREFORE**, Plaintiff demands judgment against Defendants, National Railroad Passenger Corporation a/k/a Amtrak and BNSF Railway Company for such damages as may be permitted pursuant to applicable law, including all compensatory and punitive damages, together with interest, costs, and attorneys' fees, and all other relief that this Court deems just and appropriate.

### COUNT IV – SURVIVAL ACTION

### PLAINTIFF, JASON VARNADOE, Individually and as Administrator of the ESTATE OF DONALD VARNADOE v. NATIONAL RAILROAD PASSENGER CORPORATION a/k/a AMTRAK AND BNSF RAILWAY COMPANY

153.     All preceding paragraphs of this Complaint are incorporated herein by reference the same as though fully set forth herein.

154.     Plaintiff brings this claim pursuant to the Illinois Survival Act, 734 ILCS 5/13-209 and 755 ILCS 5/27-6.

155.     Plaintiff claims on behalf of the Estate of Donald Varnadoe all damages suffered by Donald prior to his death and by his Estate by reason of his death, including but not limited to the severe and devastating injuries suffered by Donald which resulted in his death, the anxiety, horror, fear of impending death, mental disturbance, pain, suffering, and other intangible losses which Donald suffered prior to his death.

156.     Plaintiff brings this Survival Action claim on behalf of the Estate of Donald Varnadoe and claims all benefits and damages recoverable under the Illinois Survival Act.

157.    In the alternative, to the extent a Court were to determine that Montana law were to apply to the damages in this litigation, Plaintiff asserts the damages recoverable in accordance with § 27-1-501, MCA and brings this action to recover the same.

**WHEREFORE**, Plaintiff demands judgment against Defendants, National Railroad Passenger Corporation a/k/a Amtrak and BNSF Railway Company for such damages as may be permitted pursuant to applicable law, including all compensatory and punitive damages, together with interest, costs, and attorneys' fees, and all other relief that this Court deems just and appropriate.

## COUNT V – WRONGFUL DEATH

### PLAINTIFF, JASON VARNADOE, Individually and as Administrator of the ESTATE OF MARJORIE VARNADOE v. NATIONAL RAILROAD PASSENGER CORPORATION a/k/a AMTRAK AND BNSF RAILWAY COMPANY

158.    All preceding paragraphs of this Complaint are incorporated herein by reference the same as though fully set forth herein.

159.    As a direct and proximate result of Defendants' negligence, gross negligence, carelessness, recklessness, and/or other liability producing conduct, Marjorie Varnadoe was tragically killed in the derailment of Empire Builder Train 7/27.

160.    Marjorie is survived by her son, Plaintiff, Jason Varnadoe and Jason's wife and young son.

161.    Plaintiff brings this claim pursuant to the Illinois Wrongful Death Act, 740 ILCS 180/1, *et seq.* and claims all benefits and recoverable damages under the Illinois Wrongful Death Act on behalf of all other persons entitled to recover under law.

162.    By reason of the death of Marjorie Varnadoe, caused by the aforementioned negligence, gross negligence, carelessness, and/or recklessness of Defendants, her beneficiaries

have in the past and will in the future continue to suffer great pecuniary and intangible losses, including but not limited to, loss of financial and emotional support, loss of aid, loss of services, loss of companionship, loss of consortium and comfort, loss of counseling and loss of guidance and tutelage.

163.    By reason of the death of Marjorie Varnadoe, caused by the aforementioned negligence, gross negligence, carelessness, and/or recklessness of Defendants, her beneficiaries have in the past and will in the future continue to suffer unfathomable grief and emotional and psychological pain.

164.    By reason of the death of Marjorie Varnadoe, caused by the aforementioned negligence, gross negligence, carelessness, and/or recklessness of Defendants, her beneficiaries have suffered the loss of future earnings and wages that would have been earned by Marjorie Varnadoe from the date of his death until the time in the future that she would have lived had she not died as a result of the injuries sustained.

165.    By reason of the death of Marjorie Varnadoe, caused by the aforementioned negligence, gross negligence, carelessness, and/or recklessness of Defendants, her beneficiaries have incurred or have been caused to incur and pay large and various expenses for medical treatment, hospital care and medicine rendered to decedent until the time of her death and to incur various funeral, burial, and estate and administration expenses for which Plaintiff is entitled to compensation.

166.    In the alternative, to the extent a Court were to determine that Montana law were to apply to the damages in this litigation, Plaintiff asserts the damages recoverable in accordance with § 27-1-513, MCA and brings this action to recover the same.

36

**WHEREFORE**, Plaintiff demands judgment against Defendants, National Railroad Passenger Corporation a/k/a Amtrak and BNSF Railway Company for such damages as may be permitted pursuant to applicable law, including all compensatory and punitive damages, together with interest, costs, and attorneys' fees, and all other relief that this Court deems just and appropriate.

### COUNT VI – SURVIVAL ACTION

**PLAINTIFF, JASON VARNADOE, Individually and as Administrator of the ESTATE OF MARJORIE VARNADOE v. NATIONAL RAILROAD PASSENGER CORPORATION a/k/a AMTRAK AND BNSF RAILWAY COMPANY**

167.    All preceding paragraphs of this Complaint are incorporated herein by reference the same as though fully set forth herein.

168.    Plaintiff brings this claim pursuant to the Illinois Survival Act, 734 ILCS 5/13-209 and 755 ILCS 5/27-6.

169.    Plaintiff claims on behalf of the Estate of Marjorie Varnadoe all damages suffered by Marjorie prior to her death and by his Estate by reason of her death, including but not limited to the severe and devastating injuries suffered by Marjorie which resulted in his death, the anxiety, horror, fear of impending death, mental disturbance, pain, suffering, and other intangible losses which Marjorie suffered prior to her death.

170.    Plaintiff brings this Survival Action claim on behalf of the Estate of Marjorie Varnadoe and claims all benefits and damages recoverable under the Illinois Survival Act.

171.    In the alternative, to the extent a Court were to determine that Montana law were to apply to the damages in this litigation, Plaintiff asserts the damages recoverable in accordance with § 27-1-501, MCA and brings this action to recover the same.

**WHEREFORE**, Plaintiff demands judgment against Defendants, National Railroad Passenger Corporation a/k/a Amtrak and BNSF Railway Company for such damages as may be permitted pursuant to applicable law, including all compensatory and punitive damages, together with interest, costs, and attorneys' fees, and all other relief that this Court deems just and appropriate.

Dated: February 21, 2022                      Respectfully submitted,

                                        */s/ Adam J. Levitt*
                                        Adam J. Levitt
                                        Mark DiCello
                                        **DICELLO LEVITT GUTZLER LLC**
                                        Ten North Dearborn Street, Eleventh Floor
                                        Chicago, Illinois 60602
                                        Tel: (312) 214-7900
                                        alevitt@dicellolevitt.com
                                        madicello@dicellolevitt.com

                                        Robert J. Mongeluzzi*
                                        Jeffrey P. Goodman*
                                        Samuel B. Dordick*
                                        **SALTZ MONGELUZZI & BENDESKY P.C.**
                                        One Liberty Place
                                        1650 Market Street, 52nd Floor
                                        Philadelphia, Pennsylvania 19103
                                        Tel: (215) 496-8282
                                        rmongeluzzi@smbb.com
                                        jgoodman@smbb.com
                                        sdordick@smbb.com

                                        ***Counsel for Plaintiff***

                                        *Applications for admission *pro hac vice* to be filed.